Good morning, my name is Vadim Zapolsky, for the petitioner Grigor Hovhanesyan. You may proceed. This was a case that arose in El Centro, California, in a detained matter. The petitioner was 21 years old at the time. He testifies that he was a member of a politically active family. On one instance, he was hit by a car and severely injured to his arm. He had a six-inch scar on one part of the arm and a six-inch scar on another part of the arm. And on another occasion, he was beaten outside his house by government agents. Both times, they asked about his brother, who had previously been granted asylum on political grounds, and both attacks were motivated based on the family and his political opinion. The issue was there was a medical document submitted which detailed his injury to his arm and his one-and-a-half months stay at the hospital. The immigration judge looked at the translation. He said the medical document says the injury is to the shoulder bone. There's no such thing as a shoulder bone. So it was a lot of confusion. He said, I'm looking at your shoulder. I see nothing wrong with your shoulder. And we both poked around his shoulder. We both approached the bench. I'm not a doctor, neither is the judge. To me, it felt a little caved in. The judge disagreed. Well, I.J. was concerned, if I'm reading the transcript correctly, that he asked the petitioner, do you have a scar on your shoulder? And the petitioner says, yes, I do. And then he showed him the shoulder, and he didn't see a scar. So it wasn't the mix-up in the translation was one thing, but it sounded like he was concerned that the petitioner was pretending to have a scar on the shoulder when, in fact, he didn't. If I may respond, the petitioner did say there was no rupture, which to me means there was no break in the skin. And in the transcript as well. I think he said it would be small. It would be small, but he also said there was no rupture. I don't know how you can have. But to me, it felt caved in. So that was the issue. But it is clearly no issue as far as the scars that were present on his body. After the confusion, the case was put over. Was there any other evidence? Well, there was kind of a lot of confusion about a lot of things. But the question is, is it inconsistent or is it confusion? And so that's because besides he does have the scars and he does have medical reports. Right. But then the IJ was concerned about that it said he went into surgery two days after he said he went to the hospital. Judge, if you notice, even basically there was a period before that. There was two days after the trauma. And there was another part of the medical document which says he was admitted on June 18th, which is the date of the trauma. And even the government, the respondent in their brief, conceded that this wasn't an issue. All right. So assuming that he did get hit by the car and that those were injuries that he had, there were also, the IJ cited, there were statements concerning his education in Yerevan and Lacho were at least confusing, if not inconsistent. So why do they not provide substantial evidence for the adverse effects of trauma? If I may respond, even the IJ in his decision said that these were not material inconsistencies. Someone can go to school here, go to school, let's say, in UCLA, be born in Los Angeles, but the family roots are in a different part of the country. The respondent admitted on the record that his roots are in Lachon. And this is information in the medical record that he provided the hospital. This is a check-in letter to the hospital. He could have stated, yes, I was born in Yerevan, I'm from Yerevan, but he said that his roots are in the Lachon region. And that, to me, is a credible explanation. And even the IJ notes that this was a material inconsistency, was not a material inconsistency. Can I take you back for a moment to the medical report? Yes. There were two different interpretations that were provided, which said slightly different things. My first question is, why were these translations so different? Were they both by certified translators, and which one is correct? The correct one is the second one, which basically talks about the humerus. The first one talks about a shoulder bone. There's no such thing as a shoulder bone in English. The second translation was obtained by a competent court-certified interpreter. The first translation was someone who did that previously, who had the translation previously in support of the mother's case. And the second translation is the one that's correct. The second translation is the one that details which part of the body was injured, and that should have cleared up any kind of misunderstanding. And the first translation also had the mistake as to the date of discharge. Now, this one, looking at the second report, it says, the patient was admitted to the surgery unit two days after he received the trauma, 6-18-01. And then it says the wound was infected, and after the healing of the wound on 6-26-01, the patient underwent surgery. So the IJ's interpretation, which was that he was admitted on 6-18-01 two days after he received the trauma, and then went into surgery on 6-26-01, seems to be supported by this language. Why was the IJ's identification of the inconsistency between the date that the petitioner said he was wounded or injured and the date that he actually was admitted into the hospital incorrect? Well, if I may respond, during the hearing, the government attorney looked at this letter, and they wanted to ask a question. The IJ said, no, no, it's crystal clear. He was admitted on 6-18, and two days later he had the surgery. So he didn't allow the government attorney to ask the question because it was crystal clear. After we obtained the translation, it was the same translation as to the dates of entry. There's a period before 6-18. There's a .5 of the medical document. It says date of admission was 6-18. And even the government in their brief concedes that this is a non-issue. So I think, you know, to me that was clear. I'll have a question for the government as well, but it says the injury happened on 6-18, and this document said he was admitted at 6-18 two days after he received the trauma. That does seem to be an inconsistency. If you look at the first part of the document, .5, I believe, it says date of admission and date of discharge. Date of admission is 6-18. Date of discharge, I believe, is August 6th. And what the confusion was, you're looking at the second part, which gives more text. It says there's a period before the 6-18. He was admitted to the surgery two days after the trauma, period 6-18, which is an ambiguity, but the first page of the document is clear as to the date of admission. And basically those, I think, were cleared up. The court makes an issue that the petitioner said he went to Ukraine in July, and it was actually August. This was three years before. The court in De Leon Barrow v. INS has said that mistakes to date can form a basis for negative credibility finding. And it was August 6th. It was right in the beginning of August, so basically he could have been out by a week. And the court found that's a material inconsistency, and that can't stand. Does there have to be a material inconsistency before an immigration judge who is face-to-face with the applicant can make a determination that he just doesn't believe the applicant's testimony? Yes. I believe there has to be a reason that goes to a material inconsistency. It has to go to the heart of the claim to form an adverse credibility finding. It has to be material. When we have a jury trial, we tell the jury that it is up to them to decide what testimony to believe and what testimony not to believe. We tell them they can believe everything a witness says, part of it or none of it. And we tell them in judging the credibility of a witness, they can take into account such things as a witness's demeanor on the stand. Yes, Your Honor. We don't have the benefit of that here. If I may respond, the court has already found in Bandari v. INS that minor inconsistencies that don't go to the heart of the claim are insufficient for adverse credibility finding. So it pretty much has to be gotcha. In other words, he has to say something that is so material that it affects the validity of his claim, and we have to be able to say that is false before we can affirm I.J.'s finding that he just doesn't believe the applicant. It has to be something that has to do with his asylum, with the basis of his asylum claim. That's what my belief is. If you were arrested and taken to another city and the declaration says something else, that's a material inconsistency. If you say you were held for a month and you stay for one day, that's a material inconsistency. A mistake as to a week in time for an event that happened three years ago, and don't forget that the petitioner is 21 years old, he's been in INS jail for several months. I don't believe that's a material inconsistency. Well, when we analyze inconsistencies, though, also, whether they're material and whether they go to the heart of the claim, we look at our Ninth Circuit case law as well. I understand. I understand. And so if there are cases that it says something's not, even if it defies logic, we're bound by that. Right. Basically, your time's up. I'll give you one minute for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is David Shore. I represent the Attorney General in this matter. Good morning. Good morning. In this asylum case, the petitioner had a full and fair opportunity to present his claims, and the immigration judge determined that the petitioner lacked credibility, and he cited discrepancies that are central to petitioner's claim that police hit him with a car, which would Well, why, though, is this, you know, I guess the issue that I would have on this, whether it's the shoulder, whether it's the humerus or whatever, he clearly has on his arm, he's got a scar. He has hospital records that indicate he's in the hospital for an injury to his arm, and it's a lengthy stay. And also, while there one explanation can be that he was admitted and then he didn't go into surgery until two days later, and I think you heard the petitioner make the comment that you were saying that that discrepancy really isn't, you're not relying on that? In the government's brief, felt that that was not a substantial evidence to support that specific finding, and the government is not going to change its position at this point. And that's because the hospital records basically indicate that he went in there on 6-18 and that it would appear that then he went into surgery two days later, as opposed to going to the hospital two days after the injury. Your Honor, in the petitioner's brief, they can see that this is somewhat ambiguous, because it says he did testify, by the way, that the accident occurred on 6-18, and both hospital documents say date of admission to the hospital is 6-18. The ambiguity is in the narrative that's written down, I think on page two of the, at least the corrected translation, where it says he was admitted to surgery two days after the trauma, period, 6-18-01, period. And the petitioner concedes that this is ambiguous. Yes, but the government has declined to defend that specific discrete finding. All right, so what are you saying supports the adverse credibility then? The petitioner provided discrepant testimony as to the nature of the injuries that he sustained, and this calls into question his recounting of the manner in which he sustained these injuries. He first showed the immigration judge his elbow and his lower arm, and the immigration judge noted two scars. When asked if that was it and there were any other scars, he indicated that he had one on his foot or his ankle. Asked if there were others, he said no. Then later he reversed himself and claimed that he had an injury to his shoulder and claimed that he in fact had a scar on his shoulder. The immigration judge examined it and found no scar. And then later the petitioner was asked, was your shoulder injured? And then the petitioner indicated no, my elbow was. And then the medical documents indicate, both medical documents, the first translation is the shoulder bone. And as the immigration judge said, this is a far cry from the elbow. And then the corrected translation says the humerus, which is the bone in the upper arm. And these inconsistencies indicate that or gave the immigration judge reason to say, to doubt whether the injuries were inflicted as petitioner claimed, that is, being hit by a police car. In addition, the immigration judge also noted that the petitioner went to, according to his testimony and his written statement, this is a statement that he made twice, that he went to Kiev in July 2001. And this falls within the period that he was recovering in the hospital after an attempt on his life. The appellant makes the point that it says, and he returned in June, so it does seem like there was some confusion there in the testimony. Yeah, that may be right. You can't return, you know, before you went. Yes. That was cleared up later in the testimony, when the immigration judge was asking him about returning at the end of the year, which is what he subsequently claimed, that he was there. And he voluntarily returned, unable to obtain status in Ukraine, and he voluntarily returned to Armenia. Well, are you concerned with the fact that the, you know, this seems to be, and to some extent his is, he's claiming that he has problems because of his brother, and his brother testifies at the hearing. And his brother apparently got asylum. Now his mother gets asylum. So everyone that goes to a different immigration judge gets asylum, and there's some confusion here. Does that concern you at all? In this case, no, no. These are different, discrete claims. And the issue here is whether he was targeted on account of his brother's political opinion. And the immigration judge found that he failed to sustain his burden with credible evidence. Now, it's entirely possible that the brother was, in fact, targeted. And I'd also like to note that in the brother's testimony, he mentioned how the mother was also politically active, and that she organized meetings or rallies. So it's entirely possible that the mother and the brother were both targeted, and that they wanted to come to the assistance of Petitioner, or of the Petitioner here, who was not, or failed to show credibly that he was targeted. There does seem to be confusion here. What's your read on the interpreters here? I mean, we don't seem to have great interpreters here. There was no issue that was raised below with respect to the accuracy of the hearing translator. No issue was raised to the Board or the immigration judge during the hearing. And that's to the extent that Petitioners would want to challenge that, and I don't know that they do. That issue is not before the Court. When are you going to be able to respond to Mr. Yusupolsky's letter talking about the mother? Your Honor, under the INA, this Court's review is limited to the administrative record. And the grant of asylum to the Petitioner's mother is obviously extra record evidence. But in addition, it's a potential path to another form of relief, which is derivative asylum status. But this is all moot. If he gets derivative asylum status, then why do we even have to worry about this? Well, the underlying order of removal here, the denial of asylum here, it doesn't bear on this decision on this order of removal. Now, that he has potential eligibility for another form of relief down the road that the Board hasn't even addressed yet, that doesn't bear on this case. And in addition, as counsel noted, he testified that he was married. Now, to get derivative status when you're over the age of 21, you have to be an unmarried individual. And he testified that he was married. And counsel noted that he's alleging that this is a customary wedding rather than a legal one. But in any event, these issues haven't even been brought to the Board's attention yet. How long is it going to take the Board to decide this thing? Ten more years. I don't know, Your Honor. Well, where is he going to be during those ten years, here or someplace else? That depends on the Court's decision on the petition for review. I know. But if we affirm, is he going to be deported while the Board considers his derivative status? Well, the Board isn't considering anything until the Petitioner then goes and files a motion to reopen with the Board. And the motion to reopen would be time-barred at this point. So the Petitioner would have to seek DHS's consent in waiving the time bar. Now, if we don't agree that the adverse, just hypothetically, if we did not agree that the adverse credibility was supported by substantial evidence, then what do you think would be, what would happen then? The agency would have to address the merits of Petitioner's claims in the first instance, Your Honor. So then it would have to be remanded? Yes, Your Honor. But substantial evidence does support the adverse credibility finding. I just want to note briefly that the immigration judge is not required to ignore repeated inconsistencies. Unfortunately, the Ninth Circuit law isn't really, you know, I mean, if I had, if I were queen of immigration, that I would probably say what Judge Shub is talking about. Why do we evaluate credibility any differently than we do in other contexts? But the Ninth Circuit law has sort of, we've woven this web of things that, for example, that the dates that we talk about, that when he returned and all of that, there are cases out there that say that when someone says something happened a year ago and it really happened two years ago, we've got cases out there that say that that doesn't support a finding of adverse credibility. So what is your best, what's your best argument with the Ninth Circuit? Because you're not relying on the discrepancy in the dates at the hospital, but you are relying on the shoulder or the humerus or something, right? That. And then when I see it. In addition, Petitioner was inconsistent in his testimony. There's certain basic facts about his background, claiming at first that he's from Latchin. When confronted with this, he said, I went to school for three months in Latchin. I didn't go to school in Yerevan.  And then he explained his inconsistencies, saying, my family in 95 or 96 moved to Latchin. However, I stayed in Yerevan. And there was also discrepancies with regard to whether or not he's in fact, you know, even fears a nationwide persecution when he exited through the airport, passing through customs. And in addition, he was equivocal and evasive. And the immigration judge noted some demeanor evidence with regard to, well, first in his response to his inconsistencies regarding where he lived, but also the immigration judge found him evasive and equivocal when asked whether his wife was in hiding, first indicating that she's at her parents and that she's, I could say specifically, he said, as if she was leaving openly, that is. He said she's not free at the moment. Asked if she's hiding. He said she's at her parents. Asked for a yes or no. He gave no response. And then he says, I told her to be cautious. And then finally, he acknowledged that his wife is in fact not in hiding and that she was safe. Looking at these —  GOTTLIEB He's in Rassadab. MR.  Yes, ma'am. MS. GOTTLIEB Over time. MR. GARCIA. Look at these inconsistencies cumulatively. This Court has rejected the divide and conquer approach to looking at an immigration judge's decision. Look at the decision and all the evidence in the aggregate. And the immigration judge is not required to ignore a pattern of inconsistent statements. And for those reasons, the Court should not petition for review. Thank you, Your Honor. MS. GOTTLIEB Thank you. MR. GARCIA. In response to your question if the petition for review is denied, there's a good chance he will be deported because the motion to reopen is more than it would be more than 90 days after the final order of the Board. So he would be deported. So I don't know. But he would have to go back to the place where he fears going. If the Court finds that he has testified credibly, the Court should find that he has suffered persecution. Clearly, these are severe acts of violence for which he was hospitalized on one incident for over a month and a half. MS. GOTTLIEB Excuse me, though. I mean, if we held that the IJ's adverse credibility determination wasn't supported, then it just goes back to the IJ to determine whether he qualifies for the relief he's seeking, correct? MR. GARCIA. Well, the IJ has said that there has been no evidence of past persecution that's been established. And that's what I argued in my brief. And the Court has well in the power to do so. And then he would only have to – basically, the government would only be able to argue that there's been a change of circumstances, which they've never presented any evidence of. And in addition, the petitioner – his brother testified, do I have it right? MS. GOTTLIEB He didn't need to put any on at that time because he wasn't found to be credible. And that was –  CARNEY Right. I understand. Basically, he said he exaggerated. And then he threw in – the IJ threw in a comment that no credible person is specified in his behalf. But the incidents he cited were minor and absolutely not material. There is no sufficient reason why he found the Respondent's brother not credible. MS. GOTTLIEB I think we have your argument, Senator. Thank you for your argument. MR. CARNEY Thank you for your time. MS. GOTTLIEB Thank you.  MS.
judges: Callahan, Ikuta, Shubb